IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Autodesk Canada Co., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 08-587-SLR-LPS |
| | : | |
| Assimilate, Inc., | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Pending before me in this copyright infringement action is the Motion to Dismiss or, in the Alternative, for Summary Judgment, or for Transfer of Venue (Docket Item ("D.I.") 8 and, hereinafter, "Motion") filed by Defendant Assimilate, Inc. ("Assimilate"). For the reasons discussed, I find that both dismissal and summary judgment would be inappropriate at this juncture. In addition, I find that Defendant has not met its burden of demonstrating that transfer to the Northern District of California would be warranted. Accordingly, I recommend the Court deny Defendant's Motion.[1]

---

[1] Pursuant to the March 3, 2009 referral order (D.I. 33) and 28 U.S.C. § 636, my authority with respect to case-dispositive motions is limited to issuing a Report and Recommendation ("R&R"). To the extent Defendant's Motion seeks the relief of dismissal and summary judgment, it is indisputably case-dispositive. With respect to Defendant's alternative request for transfer, there is a split of authority as to whether a motion to transfer is case-dispositive. *Compare Oliver v. Third Wave Techs., Inc.*, 2007 WL 2814598, at *2 n.3 (D.N.J. Sept. 25, 2007) (magistrate judge treating motion to transfer as dispositive) *with Kendricks v. Hertz Corp.*, 2008 WL 3914135, at *2 (D.V.I. Aug.18, 2008) ("A motion to transfer venue is not a dispositive motion."); *Berg v. Aetna Freight Lines*, 2008 WL 2779294, at *1 n.1 (W. D. Pa. July 15, 2008) (same). Given the uncertainty on this point, I treat the entirety of Defendant's Motion as case-dispositive.

1

I.  **BACKGROUND**

Plaintiff Autodesk Canada Co. ("Autodesk") creates computer software and related systems for the media and entertainment industry. (D.I. 1 at ¶ 2) "Autodesk is an unlimited liability company organized and existing under the laws of the Province of Nova Scotia, with its principal place of business in Montreal, Quebec, Canada." (D.I. 1 at ¶ 2) It is a wholly-owned subsidiary of Autodesk, Inc., a Delaware corporation. (*Id.*)

Defendant Assimilate is a small company whose sole product – a software program called "Scratch," which provides color correction, digital compositing, and art and editing functions for the post-production and visual effects industry – is alleged to infringe user-interface copyrights purportedly held by Autodesk and used in Autodesk's software program "Cyborg 2.0." (D.I. 1 at ¶ 10; D.I. 9 at 1) Assimilate is a Delaware corporation with its principal place of business in Santa Clara, California. (D.I. 1 at ¶ 3; D.I. 9 at 25; D.I. 10, Ex. E at ¶ 5; D.I. 23, Ex. A at ¶ 7)

II. **THE PARTIES' CONTENTIONS**

   A.   <u>Dismissal or Summary Judgment</u>

By its Motion, Assimilate seeks dismissal of the Complaint (D.I. 1) filed on September 18, 2008 by Autodesk, pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Assimilate moves for summary judgment, pursuant to Rules 12(d) and 56(b).

Assimilate first contends that Autodesk has failed to describe any protectable expression that could have been infringed or copied by Assimilate. (D.I. 9 at 1, 5, 7; *see also generally* D.I. 22.) Autodesk's Complaint lists seven elements of the user-interface of Autodesk's Cyborg 2.0 that Autodesk alleges are infringed by Assimilate's Scratch product. (D.I. 9 at 1, 8; D.I. 1 at ¶ 12) According to Assimilate, Autodesk's allegations refer to a collection of elements that are

common to computer interfaces and are excluded from copyright protection under one or several of the doctrines of merger, method of operation, or *scènes à faire*. (D.I. 9 at 19; D.I. 22) That is, Assimilate asserts that each of the seven identified elements is nothing more than an idea or the expression of an idea that is so closely tied to the idea itself that the idea and the expression are merged and unprotectable as a matter of law; an unprotectable method of operation; or *scènes à faire*, i.e., "those elements of a work that necessarily result from external factors inherent in the subject matter of the work." (D.I. 9 at 1, 8-18)

Assimilate next contends that Autodesk has failed to allege that any compilation of non-protected elements resulted in "virtually identical" copying of Autodesk's user-interface as a whole, and, therefore, Autodesk has not alleged copyright infringement in that compilation. (*Id.* at 19; *see also generally* D.I. 22.) According to Assimilate, Autodesk has not alleged that Assimilate's Scratch user-interface is "virtually identical" to the Cyborg 2.0 interface, alleging instead only a lesser and unprotectable "substantial similarity." (D.I. 9 at 18-19)

Assimilate further challenges Autodesk's purported ownership of a valid copyright in the Cyborg 2.0 platform source code. (*Id.* at 2, 6, 19-25; D.I. 22) While Autodesk attached a registration for Cyborg 2.0 to its Complaint, that registration was filed more than five years after the first publication of Cyborg 2.0. (D.I. 9 at 2, 4, 6, 19-20) Assimilate argues that the registration does not constitute prima facie evidence of copyright ownership and Autodesk has not alleged other facts adequately supporting its ownership. (*Id.* at 2, 6, 19-20)

Relatedly, Assimilate insists that Autodesk does not own fundamental portions of the source code for Cyborg 2.0. (*Id.* at 2, 6, 20-21) While Autodesk alleges that it acquired Cyborg 2.0 from a bankrupt software company called 5D Solutions Ltd. ("5D"), the vast majority of the

3

source code for Cyborg 2.0 was written by Gerk Huisma. (*Id.* at 2, 3, 6, 20-21) According to Assimilate, Mr. Huisma (who is now an officer of Assimilate) was an independent contractor for 5D working in the Netherlands when he wrote the relevant code. (*Id.* at 2, 3, 6, 21-22) Under Dutch law, Assimilate contends, Mr. Huisma retained ownership of the copyright in the source code he wrote; it never belonged to 5D and, so, could not have transferred from 5D to Autodesk. (*Id.* at 2, 3, 6, 23-25)

In response, Autodesk submits that its allegations are sufficient and that it has properly alleged infringement and copying of distinctive, copyrightable user-interface elements as well as the required "substantial similarity" between the products. Autodesk notes that its Complaint is necessarily based only on the limited portions of Scratch that are publicly available and, consequently, the seven elements it identifies "are only a few examples" of Assimilate's copying. (*See generally* D.I. 14; D.I. 1 at ¶ 12.) Autodesk's sole access to Assimilate's Scratch product has consisted of limited views of the product posted online; it has had no access to the source code for Scratch. (*Id.* at 8) To Autodesk, dismissal and summary judgment would be inappropriately premature because no discovery had been conducted when the Motion was filed. (D.I. 14 at 16-17; D.I. 18 at ¶ 5) Autodesk asserts that, at this stage of the litigation, it is entitled to have its allegations taken as true and to obtain discovery of the full scope of Assimilate's copying. (D.I. 14 at 8)

Autodesk further contends that it has alleged and is entitled to prove its ownership of the copyright to Cyborg 2.0. (*Id.* at 9) At the very least, it continues, there is a factual dispute about whether Mr. Huisma was a 5D employee or an independent contractor. (*Id.* at 2, 9-16) Hence, again, Assimilate's Motion is premature.

B. <u>Transfer of Venue</u>

As other alternative relief, Assimilate has moved to transfer venue from the District of Delaware to the Northern District of California in the interests of convenience and justice, pursuant to 28 U.S.C. § 1404(a). Assimilate insists that the only connection between this case and the District of Delaware is Assimilate's incorporation here in Delaware. Assimilate's headquarters are in Santa Clara, California, where its records are maintained. (D.I. 10, Ex. E at ¶ 5)² Assimilate is a small company, having just 12 employees and 3 officers. (*Id.* at ¶ 4) Two of the three officers, including Assimilate's Chief Executive Officer, reside in Northern California. (*Id.*) Lead counsel for both parties are also located in Northern California. (D.I. 23, Ex. A at ¶ 6)

Assimilate has no employees or offices in Delaware and does no business in Delaware. (D.I. 10, Ex. E at ¶ 6) It has never sold a product in Delaware. (*Id.*) By contrast, Assimilate does considerable business in California, where approximately 35% of its sales have occurred. (*Id.* at ¶ 7) Assimilate contends that California has an interest in resolving issues relating to copyright infringement by companies operating and selling products there. (D.I. 9 at 28; D.I. 22 at 17) It also notes that Northern California is a large District with plentiful judicial resources, comparing that situation with "the extremely large caseload carried by each of the three District Court judges in this District [of Delaware]." (D.I. 9 at 28)

Mainly, however, Assimilate focuses on an alleged "disparity of resources" between the two parties. (*Id.* at 26-28) Assimilate describes itself as "a very small company with finite

---

²Autodesk has pointed to a number of entities in Florida with names similar to Defendant's name. (*See, e.g.*, D.I. 14 at 19; D.I. 19, Exs. 2, 4-7.) However, according to Assimilate's CEO, only one of these – Assimilate of South Florida, Inc. – was related to Defendant, and it no longer exists. (D.I. 23, Ex. A at ¶ 7) Also, "although Assimilate once had a sales office in Miami, Florida, that office was closed in 2005." (*Id.*)

resources, [which] will face significant financial hardship in pursuing the case in Delaware, hardship that will be partially ameliorated if the case is moved to Northern California." (D.I. 9 at 6, 26-28; D.I. 10, Ex. E at ¶ 8; D.I. 22 at 15-17; D.I. 23, Ex. A at ¶¶ 5-6) Assimilate characterizes Autodesk as "an enormous multinational company with no significant connection to Delaware" which "will face little or no hardship if the case is transferred." (D.I. 9 at 6; *see also* D.I. 22 at 15-16.) Assimilate contrasts its status as "a company that is still very much in the nascent stages of its development," having annual revenue between $1.9 and $4.3 million, with that of Autodesk Inc. – of which Plaintiff is a wholly-owned subsidiary – which "has revenues of $2.1 billion and has 7,300 employees in 121 offices worldwide." (D.I. 9 at 27; D.I. 22 at 15; D.I. 23, Ex. A at ¶ 6) Plaintiff itself, even without its parent, has 500 employees and annual revenues of $300 million. (D.I. 22 at 16)

Autodesk responds that venue is appropriate in Delaware. Most importantly, Autodesk emphasizes that Assimilate chose to incorporate here and has availed itself of Delaware's benefits and laws. (D.I. 14 at 2, 17-23) Being sued here, therefore, can have come as no surprise to Assimilate.

Autodesk adds that the location of lead counsel in California is irrelevant. A more pertinent consideration is that Mr. Huisma, Assimilate's Chief Technology Officer and the principal developer of the infringing product, is a resident of the Netherlands and has no connection to the Northern District of California. (D.I. 14 at 19) Indeed, according to Autodesk, Assimilate's only certain connection to the proposed transferee District appears to be that two of its officers own houses there, only one of which is considered to be a primary residence. (*Id.*) Autodesk views Assimilate's other purported connections to the Northern District of California

as "tenuous" because "Assimilate's website only lists an office in Europe, and Yellow Pages.com returns no results in California for Assimilate;" plus, "Assimilate's corporate filings and 'Linkedin' profile list its principal place of business as Florida." (*Id.*)

Plaintiff also explains that while its parent, Autodesk Inc., resides in Northern California, Autodesk Inc. is not a party to this action. (*Id.* at 19) To the extent Autodesk Inc.'s characteristics are even relevant, most notable is that Autodesk Inc. is incorporated in Delaware. (*Id.* at 20) Plaintiff itself is a Canadian company headquartered in Montreal. (*Id.* at 19) Autodesk further challenges Assimilate's claim of being just a "small company," given that its website reveals that it markets the accused product nationally, its customers are located in at least seven countries (including Bulgaria, France, Sweden, and Columbia), and it is "currently conducting a 'Worldwide Tour' in Japan, Dubai, and Brazil." (*Id.* at 20) Assimilate's officers and employees reside in at least four countries and four different states in the United States. (*Id.*) To Autodesk, "Assimilate's complaint of 'inconvenience' does not square with its virtual and international nature." (*Id.*)

With respect to the convenience of witnesses, to Autodesk this consideration weighs in its favor because Assimilate concedes that it "is not aware at this time of any witnesses who would be unavailable for trial in either forum." (D.I. 14 at 21; D.I. 9 at 27) Autodesk's chief witnesses all live in Montreal, which is closer to Delaware than to California. (D.I. 14 at 21) The chief witnesses on Assimilate's side reside around the world, and are generally closer to Delaware; for example, Mr. Huisma is in the Netherlands and 5D's sales director, Marc Dando, appears to be in the United Kingdom (although Assimilate's CEO resides in California). (*Id.*) Moreover, "the location of the books and records" does not favor transfer because, while corporate files may be

7

in California, there has been no articulation why any "documents . . . will have difficulty traveling to Delaware." (*Id.*)

Furthermore, responding to Assimilate's concern over this Court's ability to handle its caseload, Autodesk notes that the Federal Court Management Statistics show that "the median time interval from filing to trial by jury for all civil cases was 28 months in both Delaware and the Northern District of California." (*Id.* at 22) Thus, to Autodesk, "the 'docket congestion of the two jurisdictions does not dramatically differ.'" (*Id.*) Finally, Autodesk observes that "Delaware 'has an interest has an interest in litigation regarding companies incorporated within its jurisdiction.'" (*Id.*)

## III. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 127 S. Ct. at 1966 (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In reviewing a motion to dismiss, "[c]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1195 (3d Cir. 1993). Certain additional materials may also be considered without converting a motion to dismiss into a motion for summary judgment (which generally cannot be ruled upon without providing a plaintiff a reasonable opportunity for discovery). For instance, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document." *Id.* at 1196; *see also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2009) ("The court is not limited to the four corners of the complaint, however. Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment."). "If, [however,] on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

   B. <u>Motion for Summary Judgment Pursuant to Rule 56(c)</u>

  A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks omitted).

    C.    <u>Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)</u>

Under appropriate circumstances, transfer of a case from one federal court to another is authorized by 28 U.S.C. § 1404(a). Section 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of demonstrating that such a transfer is appropriate rests with the moving party. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In evaluating such a motion, courts consider a nonexclusive list of six private factors and six public factors articulated in *Jumara*:

    (1) "plaintiff's forum preference as manifested in the original choice;"

    (2) "the defendant's preference;"

    (3) "whether the claim arose elsewhere;"

    (4) "the convenience of the parties as indicated by their relative physical

and financial condition;"

    (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;"

    (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum);"

    (7) "the enforceability of the judgment;"

    (8) "practical considerations that could make the trial easy, expeditious, or inexpensive;"

    (9) "the relative administrative difficulty in the two fora resulting from court congestion;"

    (10) "the local interest in deciding local controversies at home;"

    (11) "the public policies of the fora;" and

    (12) "the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* at 879-80.

In considering a motion to transfer venue and determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum," it bears emphasis that "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879. Hence, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). "Because a plaintiff's choice of forum is accorded substantial weight and venue is transferred only if the defendant truly is regional (as opposed to national) in character, a defendant has the burden of establishing that the balance of convenience of the parties and witnesses strongly favors the

-
-

defendant. Therefore, defendants [seeking transfer] must prove that litigating in Delaware would pose a unique or unusual burden on their operations." *L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted).

## IV.  DISCUSSION

### A.  Motion to Dismiss or for Summary Judgment

In reviewing the Motion and its request for dismissal, the Court is required to accept the well-pleaded allegations in the Complaint as true. When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits, and other documents to be considered by the Court, such as the ones presented to the Court here, the motion will be construed as a motion for summary judgment under Rule 56.

Here, whether Assimilate's Motion is construed as a motion to dismiss or for summary judgment, Autodesk's primary argument is that the Motion is premature. I agree. The Motion was filed less than two months after the case was filed, before discovery had begun. (At the time briefing was completed, discovery was still in its early stages.)[3] Furthermore, Autodesk has met its burden of producing sufficient evidence to establish the existence of genuine disputes of material fact. Most prominent among these are the unsettled issues of Assimilate's infringement and Autodesk's ownership of the copyright. Given the record before the Court, there is no basis to rule as a matter of law that Assimilate does not infringe or that Autodesk does not own the copyright.

---

[3]Invoking Rule 56(f), Autodesk has filed a Declaration requesting that it be given the opportunity to take various depositions and pursue other discovery efforts to test Assimilate's assertions with respect to copyright ownership and Mr. Huisma's employment. (D.I. 14; D.I. 18) I agree that, at minimum, Autodesk is entitled to such discovery before summary judgment could be granted against it.

I therefore recommend that Assimilate's Motion to dismiss and/or for summary judgment be denied, without prejudice to renew at an appropriate time.

B.   Venue

Assimilate's request to transfer venue to the Northern District of California arises under 28 U.S.C. § 1404(a), which permits transfer of "any civil action to any other district or division where it might have been brought." This action could have been filed in the Northern District of California, given the Defendant's principal place of business is located there. Neither party contends that venue is improper in the District of Delaware. *See* 28 U.S.C. § 1391. Thus, two proper venues have been identified: Plaintiff chose to file in one (Delaware) and Defendant seeks to transfer to the other (Northern District of California). Having considered the factors identified by the Third Circuit in *Jumara*, I conclude that Assimilate has failed to meet its burden of showing that convenience and fairness strongly favor transfer.

I reference each of the *Jumara* factors in turn. (i) Plaintiff has clearly manifested its preference for Delaware as a forum by filing its Complaint in this jurisdiction and persisting in that preference, notwithstanding (ii) Defendant's preference for an alternative District. *See Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) ("Because the plaintiff's rational choice of forum should not be lightly disturbed, a transfer is not to be liberally granted. Third Circuit case law indicates that unless the balance is strongly in favor of transfer, plaintiff's choice of forum should prevail.") (internal quotation marks and citations omitted).

(iii) Although Assimilate insists that the claims arise out of conduct occurring in California, since it has significant sales in California and none (to date) in Delaware, plainly Assimilate has had sales in other jurisdictions. Its attempts to sell do not appear to be limited to

a particular District or region. Also, Autodesk has not had the benefit of discovery with respect to Assimilate's sales or its marketing efforts.

(iv) Neither Delaware nor the Northern District of California is notably more convenient for the parties. Autodesk's principal place of business is in Montreal and Assimilate's is in Santa Clara. Despite the relatively larger financial resources of Autodesk, Assimilate has sufficient resources to defend a lawsuit in Delaware – the jurisdiction in which it chose to incorporate – just as it has the resources to support employees and sales efforts in multiple countries. (v) The convenience of witnesses is not highly pertinent, given that no witnesses would be unavailable for trial in either forum. (vi) While Assimilate's documents are located in California, Assimilate does not suggest that it would be difficult to produce these documents in Delaware. Assimilate has simply not shown that participating in litigation in Delaware presents an *unusual* burden. *See, e.g., Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004) ("This court . . . has denied motions to transfer venue when the movants were unable to identify documents and witnesses that were unavailable for trial."); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) ("[T]echnological advances have substantially reduced the burden of having to litigate in a distant forum.").

(vii) There is no suggestion that a judgment would be unenforceable in either District. (viii) Nor have I been advised of any practical considerations that could make trial meaningfully easier, more expeditious, or inexpensive in one or the other of the Districts.

(ix) I am also unpersuaded that this Court's admittedly heavy caseload favors a transfer. As Autodesk observes, notwithstanding the relative resources of the Districts involved here, Federal Court Management Statistics show that the median time from filing to jury trial in a civil

case is identical in Delaware and in the Northern District of California. *See also Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer.").

With respect to (x) local interests in deciding local controversies and (xi) the public policies of each forum, the crucial fact is that the Defendant, Assimilate, is incorporated in Delaware. Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations. Nor can it be any surprise to Assimilate that it is being sued in its jurisdiction of incorporation. "Having received the benefits of Delaware incorporation, a defendant cannot now complain that another corporation has chosen to sue it here." *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006); *see also Wesley-Jessen*, 157 F.R.D. at 218 ("Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient. [Defendant] should expect litigation in Delaware courts, and it has not shown that litigating this case here will be unusually burdensome or oppressive.").[4]

A transfer motion like the one pending here inherently presents issues that must be resolved based on the specific facts and circumstances arising in each case. I find nothing in the cases cited by Assimilate – either those in which a transfer request from a small defendant was

---

[4]The final *Jumara* factor is not relevant as this is not a diversity case.

granted,[5] or those in which a transfer request from a much larger company was denied[6] – that persuades me the analysis set out here is incorrect. In the end, the law presumes a case should be litigated in the forum chosen by the plaintiff, and imposes a correspondingly heavy burden on a defendant to demonstrate that another forum would clearly be more convenient or otherwise more fair. Here, Assimilate has failed to meet this burden.

Accordingly, I recommend that the Court deny with prejudice Assimilate's Motion to transfer venue.

## V. CONCLUSION

For the reasons set forth above, I recommend that Assimilate's Motion (D.I. 8) be DENIED. I further recommend that this denial be without prejudice to the extent it relates to Assimilate's requests for dismissal or summary judgment, and that the denial be with prejudice to the extent it relates to Assimilate's alternative request for transfer of venue.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections **of no longer than ten (10) pages within ten (10) days after being served with a copy of this Report and Recommendation**. Fed. R. Civ. P. 72(b). The failure of a party to object to legal

---

[5] *See L' Athene,* 570 F. Supp. 2d at 595 (granting transfer sought by Arizona-based defendants, which presented themselves as small, regional businesses, having only twelve employees, all residing in Arizona).

[6] *See Turn of the Century Solution, L.P. v. Rectifier Corp.*, 2006 WL 1653143, at *1 (D. Del. June 15, 2006) (denying transfer request of defendant Delaware corporation having 6,000 employees in twenty countries and at least four states and revenue of over one billion dollars); *Kuck v. Veritas Software Corp.*, 2005 WL 123744, at *1 (D. Del. Jan. 14, 2005) (same for company employing more than 6,500 people worldwide, but no offices, employees, or documents in Delaware).

conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006). **A party responding to objections may do so within ten (10) days after being served with a copy of objections; such response shall not exceed ten (10) pages. No further briefing shall be permitted with respect to objections without leave of the Court.** The parties are directed to the Court's Standing Order in Non-*Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website at www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: September 29, 2009

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE